J-S03016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

KATELYN MIORELLI : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
v. :
:
:
TODD THOMPSON : No. 1002 WDA 2021

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): No. FD-20-007198

BEFORE: LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED: July 8, 2022**

Katelyn Miorelli ("Mother") appeals from the order denying her request to relocate with the parties' daughter, E.M. ("Child").[1] We affirm.

The following facts and procedural history are not in dispute. Child was born in November 2013, to Mother and Todd Thompson ("Father"), who never married. Child is the only child of both parties. At the time of Child's birth, Mother resided with her grandmother, Child's great-grandmother ("great-grandmother"), in Lilly, Cambria County. *See* N.T., 7/14/21, at 10. Mother subsequently became a registered nurse and in 2017, with Father's consent, relocated with Child, then three years old, to Pittsburgh, Allegheny County,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We use the parties' full names in the caption as neither party has requested the use of their initials. *See* Pa.R.A.P. 904(b)(2), 907(a).

after obtaining employment at Children's Hospital of Pittsburgh. *Id*. at 12, 14. In 2018, Father relocated from State College, Centre County, to Hollidaysburg, Blair County, to be closer in proximity to Child. *Id*. at 115. Father's home in Hollidaysburg is also twenty minutes from great-grandmother's home, where Child still spent "a fair amount of time" after moving to Pittsburgh. *Id*. at 105, 115-16. Prior to court intervention, Father exercised custody of Child every weekend. *Id*. at 53, 112-13, 124.

In the spring of 2019, Mother began dating S.R., a soldier in the United States Army who was stationed in New York. *Id*. at 24-25, 52. In July 2019, Father commenced custody litigation against Mother in the Blair County Court of Common Pleas, wherein he alleged that Mother planned to relocate with Child to New York to reside with S.R. Mother then filed a motion to transfer the case to Allegheny County. After conducting a hearing, the Blair County court granted the motion to transfer, finding that Blair County was an inconvenient forum. In the memorandum accompanying the transfer order, the court observed that the relocation issue was resolved as Mother averred in her pleadings and oral argument that she no longer desired to relocate.

In October 2020, Mother filed a petition to confirm the custody status quo in the Allegheny County Court of Common Pleas. Therein, Mother requested that the trial court issue an interim order reflecting the status quo of the parties' custodial rights; namely, shared legal custody, Mother's primary physical custody, and Father's partial physical custody. Father filed an

answer, and the case proceeded to a custody relief hearing. By consent interim custody order dated December 3, 2020 ("interim custody order"), the court awarded the parties shared legal and physical custody. Specifically, the order awarded Father custody of Child every weekend during the school year and awarded the parties custody on a 4/3/3/4 schedule during the summer.[2] The interim custody order also set forth a holiday and vacation schedule.

Mother married S.R. ("Stepfather") in February 2020, and commenced the instant relocation matter on December 7, 2020, seeking to relocate with Child to Fort Carson, Colorado, where S.R. was stationed. Father filed a counter-affidavit objecting to the relocation. On July 14, 2021, the trial court conducted a custody trial *via* Microsoft Teams due to the COVID-19 pandemic. The court heard testimony from Child, who was then seven years old, as well as Mother and Father. On the date of the trial, Mother was residing with great-grandmother in Lilly, Cambria County, due to the recent expiration of Mother's residential lease in Allegheny County. *See* N.T., 7/14/21, at 6.

On August 20, 2021, the trial court entered an order denying Mother's request to relocate with Child.[3] The order further directed that, if the parties

---

[2] Child attended kindergarten during the 2019-20 school year, and first grade during the 2020-21 school year. *See* N.T., 7/14/21, at 17, 28.

[3] The trial court's August 20, 2021 order constitutes a final and appealable order because it disposed of all claims and all parties by denying Mother's request to relocate with Child. *See* Pa.R.A.P. 341(b)(1) (providing that a final order is any order that disposes of all claims and of all parties).

- 3 -

cannot agree on a school district, and Mother does not relocate, then Child shall attend school in Lilly, Cambria County; however, if Mother does relocate, then Child shall attend school in Hollidaysburg, Blair County. The order also provided that, "subsequent to this short order, a detailed analysis of the determinative [relocation and custody] factors, including a detailed custody schedule, will be issued." Order, 8/20/21, at ¶ 4 (unnecessary capitalization omitted).

Mother filed a timely notice of appeal[4] and an emergency motion for reconsideration.[5] Thereafter, on September 7, 2021, the trial court entered a parenting plan order accompanied by a memorandum setting forth its analysis

_____

[4] Mother failed to file contemporaneously with her notice of appeal a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i) (providing that, in Children's Fast Track appeals, a Rule 1925(b) statement "shall be filed and served with the notice of appeal"); *see also* Pa.R.A.P. 905(a)(2) (same). Accordingly, this Court issued an order directing Mother to comply with Rule 1925(a)(2)(i) and (b). As Mother complied with this Court's directives, we decline to find that her issues are waived. *See In Re K.T.E.L*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal in a Children's Fast Track appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis).

[5] Although the record reflects that the trial court considered the motion for reconsideration, it did not expressly or unequivocally grant reconsideration. *See Cheathem v. Temple Univ. Hosp.*, 743 A.2d 518, 520 (Pa. Super. 1999) (explaining that the trial court must state expressly and unequivocally that reconsideration is granted). Accordingly, as the trial court did not expressly grant Mother's motion for reconsideration, the filing of that motion did not render inoperative the notice of appeal. *See* Pa.R.A.P. 1701(b)(3)(ii) (stating that a timely order granting reconsideration shall render inoperative any notice of appeal).

- 4 -

of the relocation factors set forth in 23 Pa.C.S.A. § 5337(h) and the custody factors set forth in 23 Pa.C.S.A. § 5328(a).[6] The parenting plan order directed that the parties follow the custody schedule set forth in the interim custody order. The order further directed that, so long as Mother is residing with great-grandmother, Child shall attend school in Lilly, Cambria County; otherwise, Child shall attend school in Hollidaysburg, Blair County. On September 27, 2021, the trial court entered a corrected parenting plan order and a corrected memorandum for the purpose of correcting clerical errors that existed in the parenting plan order.[7]

---

[6] The trial court entered the September 7, 2021 parenting plan order after Mother filed her notice of appeal. Generally, after an appeal is taken, the trial court is divested of jurisdiction to proceed further in the matter. *See* Pa.R.A.P. 1701(a). Notwithstanding, the court may take such action as may be necessary to preserve the status quo. *Id*. at 1701(b)(1). Here, the trial court's entry of the September 7, 2021 parenting plan order was necessary to preserve the status quo established by its August 20, 2021 order denying Mother's request for relocation.

[7] After an appeal has been filed, the trial court may not modify an order. *See* 42 Pa.C.S.A. § 5505; *see also* Pa.R.A.P. 1701(a). However, after an appeal has been filed, the trial court retains the inherent authority to correct orders where there are errors that are patent or obvious on the face of the record. *See Mfrs. & Traders Tr. Co. v. Greenville Gastroenterology, SC*, 108 A.3d 913, 921 (Pa. Super. 2015); *see also Manack v. Sandlin*, 812 A.2d 676, 680 (Pa. Super. 2002) (explaining that the trial court retains the inherent power "to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertencies of counsel, or supply defects or omissions in the record." at any time); Pa.R.A.P. 1701(b)(1) (recognizing a trial court's inherent authority to "correct formal errors" in the record notwithstanding a pending appeal).

After Mother filed her Rule 1925(b) concise statement, the trial court filed an opinion pursuant to Rule 1925(a). However, the trial court failed to address one of the issues raised in Mother's concise statement. Accordingly, this Court issued an order directing the trial court to prepare a supplemental Rule 1925(a) opinion addressing the additional claim of error. The trial court complied, and the appeal is now ripe for our review.

Mother raises the following issues for our review:

1.      Whether the trial court erred in naming incorrect parties within its order. In fact[,] the order identif[ied] unrelated individuals, multiple times, both in the caption of the parenting plan order of court and within the legal custody provision of the September 3, 2021 order of court; and

2.      Whether the trial court erred in naming the incorrect geographic location of where [Mother] proposes to relocate numerous times throughout the September 3, 2021 order of court; and

3.      Whether the trial court erred in stating there are multiple children involved in the custody matter when in fact there is only one (1) child.

4.      Whether the trial court erred as a matter of law, abused its discretion and/or misapplied the law in determining the credibility of Father at the time of trial, including, but not limited to[,] when Father was far from the court's view while testifying on camera.

5.      Whether the trial court erred when it did not conduct an *in camera* interview with [] Child when in fact, during the February 2, 2021 relocation conciliation, the court agreed to interview [] Child after it was requested by [Mother's counsel].

6.      Whether the trial court erred in finding that Father would not have the ability to spend nearly the same amount of time with [] Child as he does now.

- 6 -

7. Whether the trial court erred in finding that the relocation would not enhance [] Child's general quality of life.

8. Whether the trial court erred in finding that there are no other factors affecting relocation that were addressed at trial, which is not supported by the record; and

9. Whether the trial court erred in finding there are no other factors affecting the best interest of [] Child that were address[ed] at trial, which is not supported by the record.

10. Whether the trial court erred in finding that Mother has moved [] Child four (4) times based on prior romantic relationships, which is not supported by the record; and

11. Whether the trial court erred in finding that Mother changed [] Child's school on multiple occasions, which is not supported by the record.

12. Whether the trial court erred in finding that Mother is most stable and consistent when she is residing with maternal great[-]grandmother, which is not supported by the record; and

13. Whether the trial court erred in finding that Mother relies on [maternal great-grandmother] to assist in attending to [] Child's daily needs, which is not supported by the record; and

14. Whether the trial court erred in finding that Mother relies on [maternal great-grandmother] to a greater degree than Father relies on [paternal grandmother] which is not supported by the record.

Mother's Brief at 8-11 (roman numerals and unnecessary capitalization omitted, issues reordered for ease of disposition).

We review Mother's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad

scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

As this Court has explained, "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion." *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)). This

Court has recognized that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." **Ketterer**, 902 A.2d at 540 (quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

With respect to custody cases, the primary concern is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340. When presented with a motion to relocate which, as herein, also involves a custody decision, the trial court must consider all of the relocation factors set forth in section 5337(h) and all of the custody factors set forth in section 5328(a). **See A.V. v. S.T.**, 87 A.3d at 822; **see also A.M.S. v. M.R.C.**, 70 A.3d 830, 836 (Pa. Super. 2013). As the party proposing relocation, Mother had the burden of proving that relocation will serve Child's best interest pursuant to the section 5337(h) relocation factors, which are as follows:

> **(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

The trial court was also required to consider the custody factors set forth in section 5328, which are as follows:

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). The trial court must delineate the reasons for its decision on the record in open court or in a written opinion or order. *See* 23 Pa.C.S.A. § 5323(d).

Instantly, in considering the relocation factors, the trial court weighed the factors set forth in subsections 5337(h)(2), (3), (7), and (8) in favor of Father, finding that the evidence supported his reasons for opposing the relocation. Specifically, the trial court found that Father has a strong bond with Child, having been "present, vested, and involved" with her since her birth, and has had a positive impact on her development. Trial Court Opinion, 9/23/21, at 8. The court found relevant that Mother testified it would be in

Child's best interest for both parents to reside in the same area. *Id*. at 6, 8. Considering the distance between Colorado and Pennsylvania, the court concluded that the proposed relocation would adversely affect Child's relationship with Father. In addition, the court found that Child has developed a bond with great-grandmother and paternal grandmother, who are involved in her life in Pennsylvania and have had a positive impact on her development. Based on the totality of the evidence, the court concluded that the relocation would adversely impact Child's physical, educational, and emotional development. *Id*. at 6.

The trial court weighed subsection 5337(h)(6) in Mother's favor insofar as it recognized that the proposed relocation would enhance her general quality of life financially and emotionally. Nevertheless, the court determined that "the adverse effect the proposed relocation will have on [Child]'s relationship with Father outweighs the possibility that Mother's life will be enhanced emotionally and financially." *Id*. at 7. Finally, the court weighed subsection 5337(h)(1) equally between the parties, and it found the remaining relocation factors inapplicable.

With respect to the custody factors, the trial court weighed subsections 5328(a)(1), (3), (5), (9), (10), and (12) equally between the parties. The court weighed subsection 5328(a)(4) slightly in Father's favor, finding that he has provided a more stable and consistent environment for Child because he

has moved once, whereas Mother has moved four times. The court found inapplicable the remaining custody factors.[8] *Id*. at 11.

Turning to the merits of this appeal, in her first two issues, Mother argues that the trial court erred in the parenting plan order by naming incorrect parties and an incorrect geographic location where Mother proposed to relocate. Mother contends that these errors were substantive. In the alternative, she contends that "the extreme volume of errors made" constitutes reversible error. Mother's Brief at 32.

The trial court considered mother's first two issues and determined that they lacked merit. The court reasoned:

> [I]n the September [7], 2021 order of court this court used the correct parties' names for the caption on the cover page and the caption for the memorandum/relevant procedural history. The court erroneously used the incorrect names in the caption for the parenting plan order of court and legal custody section. Also, in the memorandum/relevant procedural history[,] the court correctly stated Mother was requesting to relocate the child to Fort Carson, Colorado. The court later in the memorandum relocation mistakenly refers to it as Fort Collins, Colorado. On September 27, 2021, the court created a corrected order of court in which the court corrected the above[-]referenced clerical errors in the one caption, the legal custody section, and the memorandum relocation. The said clerical errors were "obvious technical mistakes" and were not substantive. . . . [T]his court had the inherent authority to correct said mistakes.
>
> The court's obvious technical mistakes in the September [7], 2021 order of court and the subsequent correction in the

---

[8] The trial court did not address subsection 5328(a)(2.1) in its analysis; however, we will not disturb the order on this basis because there is nothing in the certified record to indicate that the subsection was applicable.

September 27, 2021 corrected order of court was not an error of law.

Trial Court Opinion, 10/4/21, at 9 (unnecessary capitalization omitted).

Mother's first two arguments pertain to the September 7, 2021 parenting plan order which contained patent and obvious mistakes, rather than the September 27, 2021 corrected parenting plan order and memorandum.[9]  As explained above, a trial court retains the inherent authority to correct clerical mistakes which are patent or obvious on the face of the record.  **See Manufacturers & Traders**, 108 A.3d at 921; **see also** Pa.R.A.P. 1701(b)(1).  We discern no error by the trial court in discovering its clerical mistakes and issuing the corrected parenting plan order and memorandum.  Accordingly, Mother's first two issues merit no relief.

In Mother's third issue, she claims that the trial court erred in the parenting plan order by incorrectly stating that there are multiple children involved in the matter instead of only one child.  While Mother does not explain her issue, our review of the record reveals that, both the initial and corrected parenting plan orders refer to "child(ren)" in paragraphs 6 and 14, which pertain to vacation and unavailability of the custodial parent.

_____

[9] When a statute or rule defines the original order as a final, appealable order, the original order remains appealable even if it is subsequently modified.  **See**, **e.g., Pittsburgh Constr. Co. v. Griffith**, 834 A.2d 572, 579 (Pa. Super. 2003) (finding that a judgment entered pursuant to Pa.R.Civ.P. 227.4(1)(b) was the final, appealable order, despite its subsequent modification).

The trial court's decision to use standard language which broadly applies to matters involving a single child as well as matters involving more than one child, is not error. Moreover, the initial and corrected parenting plan orders and memorandum make clear that Child is subject to their provisions. Accordingly, Mother's third issue warrants no relief.

In her fourth issue, Mother argues that the trial court abused its discretion in finding Father credible. Mother asserts that she established at trial that Father's credibility was impeached by the Blair County court's transfer order and memorandum. Mother also claims that the trial court abused its discretion in finding Father credible because he was seated at the end of a conference room table and far from the camera during his trial testimony *via* Microsoft Teams.

Mother's claim that she impeached Father's credibility is based on the Blair County court's memorandum accompanying its November 2019 transfer order. Therein, the Blair County court rejected Father's assertion that Child spent equal or more nights in Blair County for the previous one and one-half years. The Blair County court stated, "[b]ased on [F]ather's timeline **as laid out in his oral argument**, there is no period of time that this could be true other than a period of time during April and May of 2018." Blair County Trial Court Opinion, 11/19/19, at 7 (emphasis added).

In the instant relocation proceedings, the trial court rejected Mother's attempt to impeach Father at trial on this basis. The trial court stated on the

- 16 -

record to Mother's counsel, "you are saying this judge [in Blair County] found [F]ather not credible, and that's not the way I viewed it. The way I viewed it is this judge was referring to something that had been said in oral argument by [F]ather's attorney." N.T., 7/14/21, at 189-90.

We discern no abuse of discretion by the trial court in rejecting Mother's claim that Father's credibility was impeached during the transfer proceedings in the Blair County Court of Common Pleas. The record reflects that the Blair County court's finding was based on oral argument presented by Father's counsel and not based on testimony by Father.

To the extent that Mother argues that the trial court was unable to observe Father's demeanor at the relocation hearing, our review of the record reveals that the trial court took steps to ensure that he could accurately observe the demeanor of both Mother and Father during the custody trial. Indeed, at the beginning of Father's testimony, the court directed that Father "move slightly forward for me. It all depends on where the screens get placed on my computer. That's much better." N.T., 7/14/21, at 91. Thereafter, the following colloquy occurred between Mother's counsel and the trial court:

> [MOTHER'S COUNSEL]: Your Honor, we would actually ask closer. If he can get closer, that would be great.
>
> THE COURT: Just stay there, [Father]. Just stay there because it looks like [Father's counsel] has some fancy set up there where he is able to control the image.
>
> Is that good right now? I could see him very clearly, [Mother's counsel]. Can you?

> [MOTHER'S COUNSEL]: We can see him, but I would love the [c]ourt to be able to judge his demeanor so we would prefer a little closer if that's possible.
>
> THE COURT: **I can tell you right now I believe I certainly can see him very well and be able to judge his demeanor**.

*Id*. (emphasis added). The court subsequently interrupted Father's testimony to tell Mother's counsel, "I can't see your client right now. So[,] I don't know if there is a way to make sure that both of you are in the frame as well. I usually like to see all the litigants." *Id*. at 97. Thus, the record reflects that the court was able to see Father "very well" and to "judge his demeanor." *Id*. at 91. *See A.V.*, 87 A.3d at 820 (holding that this Court must defer to the trial court's credibility determinations because it observed the proceedings and the demeanor of witnesses). Acordingly, we will not disturb the trial court's credibility findings in favor of Father.

In Mother's fifth issue, she contends that the trial court abused its discretion and/or erred in failing to conduct an *in camera* interview of Child at trial. When confronted with a motion to relocate involving a custody determination, the trial court must consider a child's preference regarding relocation and/or custody and weigh such preference in light of the child's age and maturity. *See* 23 Pa.C.S.A. §§ 5337(h)(4), 5328(a)(7).

Mother asserts that she requested the *in camera* interview at a judicial conciliation conference on February 2, 2021,[10] and that the court agreed. Mother's Brief at 58. Mother claims that, approximately two months later, she requested, *via* e-mail, that the court schedule a custody hearing and the *in camera* interview. *Id*. Mother further claims that, on July 7, 2021, one week before the trial, she e-mailed the trial judge and again requested that the *in camera* interview occur on day of the trial. *Id*. at 58-59.

In its supplemental Rule 1925(a) opinion, the trial court determined that Mother's issue was waived. In so ruling, the court acknowledged its receipt of Mother's July 7, 2021 correspondence in which she "clearly stated that she wanted the *in camera* interview of Child 'to take place the day of trial.'" *See* Trial Court Opinion, 4/14/22, at 15 (citation omitted). In addition, the court acknowledged that Mother's pretrial statement "clearly stated that she anticipated calling Child as a witness 'at the time of trial.'" *Id*. (citation omitted). However, the court explained that, on the day of trial, Mother's counsel never called Child as a witness or raised the issue of the court interviewing Child. *Id*. at 15. The trial court further observed that, immediately after Mother testified at the trial, her counsel informed the court

---

[10] The local court rules in Allegheny County require a judge to conciliate custody matters before proceeding to trial. *See E.B. v. D.B.*, 209 A.3d 451, 462 n. 14 (Pa. Super. 2019).

that Mother's case was closed.  ***Id***.; ***see also*** N.T., 7/14/21, at 84.  The court

explained:

> If Mother's counsel would have asked this court to interview []
> Child and/or called [] Child as a witness on the day of trial, at the
> time of trial, as she specifically stated and requested in her letter
> of July 7, 2021, and her pretrial statement of July 8, 2021, this
> court would have certainly interviewed [] Child.  Furthermore,
> during the trial[,] Mother's counsel, even after prompting by this
> court, made it very clear that they did not have any witnesses or
> anything else for the court to consider, and wanted to close their
> case and make closing arguments.  This court could only conclude
> that Mother's counsel decided not to have this court interview
> [C]hild.

***Id***. at 17-18 (footnote and unnecessary capitalization omitted).[11]

Our review of the record confirms that, on the day of trial, Mother did

not request the trial court to conduct an *in camera* interview of Child.  On

appeal, this Court will not consider assignments of error that were not brought

to the trial court's attention at a time at which the error could have been

corrected.  ***See State Farm Mutual v. Dill***, 108 A.3d 882, 885 (Pa. Super.

2015) (*en banc*); ***see also Tindall v. Friedman***, 970 A.2d 1159, 1174 (Pa.

Super. 2009) (holding that a litigant must object to errors, improprieties or

irregularities at the earliest possible stage of the adjudicatory process to afford

the jurist hearing the case the first occasion to remedy the wrong and possibly

avoid an unnecessary appeal); Pa.R.A.P. 302(a) (providing that issues not

---

[11] The trial court further observed that Mother did not raise the issue of Child
not being interviewed in her emergency motion for reconsideration.  ***See*** Trial
Court Opinion, 4/14/22, at 16-17.

raised in the lower court are waived and cannot be raised for the first time on appeal). Here, as Mother failed to make any request on the day of trial that the trial court conduct an *in camera* interview of Child, she failed to preserve the issue for our review. Accordingly, Mother's fifth issue is waived.

In her sixth issue, Mother argues that the trial court abused its discretion in finding that Father would not be "nearly as present, engaged, and involved" in Child's life if she lives in Colorado. This argument implicates subsection 5337(h)(3), which concerns "[t]he feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties." *See* 23 Pa.C.S.A. § 5337(h)(3).

Mother contends that she and Father are "no strangers to the challenges that geographical distance can bring when co-parenting a child." Mother's Brief at 35. Mother notes that Father made no objection to her relocation to Allegheny County, despite the three-hour driving distance from Father's home. Mother claims that Child has become accustomed to living a significant distance away from Father, and that Father "has not maintained a place of importance in [Child's] day[-]to[-]day academic routine or medical care." *Id*. at 36. Mother argues that Father "is only physically present for 50% of his custodial time under the present order." *Id*. Mother claims that, under her proposed post-relocation custody schedule, Father would have the same number of days that he currently spends with Child. Mother contends that the

record reflects her ongoing support of Father's relationship with Child as well as her willingness to split Father's travel costs from Pennsylvania to Colorado.[12]

The trial court considered Mother's sixth issue and determined that it lacks merit. The court reasoned:

> Mother's proposal was [that C]hild would relocate with Mother to Colorado, she would give Father "ample" time in the summer but [C]hild's time with Father would begin one week after school ended, end one week before school begins, and she would have vacation time in the summer with [C]hild as well[;] the [C]hild would spend Christmas with Mother and the remainder of the break with Father[;] [C]hild would be "welcome" to spend Spring Break with Father but she would be with Mother for Easter[;] and Father could travel from Hollidaysburg, PA[,] to Fort Carson, CO[,] to see [C]hild if he wanted. N.T.[, 7/14/22, at] 35, 44-45. Under Mother's proposal, Father would spend at the very least approximately 20% less time with [C]hild then [*sic*] he does under the current status quo/order. Ultimately, if Mother relocated [C]hild to Colorado Father could spend even more than 20% less time with[C]hild then [*sic*] he currently does because at times [C]hild spends even more time with Father then [*sic*] the status quo/order. N.T.[, 7/14/22, at] 115, 124-125. Therefore, it is clear from the record that if Mother relocated [C]hild to Colorado, then Father would spend significantly less time with [C]hild and would not be nearly as present, engaged, and involved as he currently is in [C]hild's life.

Trial Court Opinion, 10/4/21, at 10-11.

_____

[12] In support of her argument, Mother relies on ***Arnold v. Arnold***, 847 A.2d 674 (Pa. Super. 2004), wherein a panel of this Court affirmed the order granting Mother's request to relocate with the parties' children to Canada. However, ***Arnold*** was decided prior to the effective date of the Act, which altered the trial court's analysis for both custody and relocation matters by requiring trial courts to consider and weigh all the statutory relocation and best interest factors. Accordingly, Mother's reliance on ***Arnold*** is misplaced.

The trial court's findings are supported by the record, and we discern no error of law or abuse of discretion. Accordingly, Mother's sixth issue warrants no relief.

In her seventh issue, Mother argues that the trial court abused its discretion in determining that the relocation would not enhance Child's general quality of life. This argument implicates subsection 5337(h)(7), which concerns "whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity." *See* 23 Pa.C.S.A. § 5337(h)(7).

Mother argues that she presented ample testimony as to how the proposed relocation would have a positive impact on Child's emotional development and academic future, including living in a military community and attending a school with a significantly higher academic rank than the school she presently attends. Mother asserts that, as a nurse, she need only work three days per week and will maintain the flexibility to create a schedule that will accommodate Child's schooling and extracurricular activities. Mother claims that Father is thirty years older than she is and that she was a teenager when Child was born. Mother maintains that Father requested that his name be omitted from Child's birth certificate and that Mother assume the primary role in raising Child. Mother contends that Father's sole reason for objecting to the relocation is to punish her for being in a new relationship. Mother

asserts that she is of childbearing years and that she and Stepfather would like to expand their family with children who will be Child's siblings.

The trial court considered Mother's seventh issue and concluded that it warranted no relief. The court explained that Mother did not present evidence that relocating Child to Colorado would benefit Child financially or provide an enhanced educational opportunity for her. *See* Trial Court Opinion, 10/4/21, at 12-13. With respect to Child's emotional development, the court determined:

> Father has been present and involved in [C]hild's life since birth. N.T.[, 7/14/21, at] 9-12, 111. . . .[C]hild and Father spend a significant amount of time together and Father is very engaged with [C]hild's life including, but not limited to, schools/academics, extracurricular activities, health, exercise, activities, and overall personal development. N.T.[, 7/14/21, at] 93-101, 124, 127, 138. Mother herself testified that [C]hild is very attached and bonded with Father. N.T.[, 7/14/21, at] 53. Furthermore, Mother testified that "the best option" for [C]hild would be to have "both people that care for her in the same area." N.T.[, 7/14/21, at] 57. Mother did not present evidence that relocating [C]hild to Colorado would benefit [C]hild emotionally. In fact, the evidence shows that [C]hild has very strong bond with Father and relocating her to Colorado away from [] Father could have an adverse impact on her emotional development.

*Id*. at 13.

The trial court's findings are supported by the record. Father testified that Child "amazes" him with her intellectual ability. N.T., 7/14/21, at 93. He additionally testified that he collects "animation cells," which is "the actual piece of artwork . . . used to produce an animated film." *Id*. at 94. Father explained:

- 24 -

I purchased an animation cell[,] and [Child] wanted to know where it came from. So I showed her a brief little snippet from the animation sequence in The Wall [by Pink Floyd], and she is like, I really like that song.

* * * *

[Child] has taken it all kinds of places that I never ever knew that she would. She understands the meanings of some of the songs.

At some point I want to introduce her to poems of Robert Frost, [and compare it] to The Wall, . . . and she will get the connection. When you see her make the little connection, it just floors me with some of the stuff that she comes up with.

*Id*. at 94-95. Father testified that Child wanted to go to NASA, and he took her. *Id*. at 95. In addition, Father testified that Child received an award of Aspiring Author, as follows.

[T]he kindergarten teacher . . . gave [Child] an award, Aspiring Author. Obviously, on the hour drive back from Pittsburgh with [Child] we would do a variety of things. Sometimes [Child] would tell me stories that she had made up. . . . So [Child] would tell me these stories on the way back. We would then make a blank book. She would illustrate the book and then dictate the story to me[,] and I would write the story into a book. We would mark it on the back in case someone wanted to buy it. I encouraged her to show this to [her kindergarten teacher].

*Id*. at 138. As a result, the kindergarten teacher gave Child the Aspiring Author award. *Id*. Based on our review of the record, the trial court's findings are supported by the record and we discern no error or abuse of discretion by the court in determining that the proposed relocation may have an adverse impact on Child's emotional development. Accordingly, Mother's seventh issue merits no relief.

In her eighth and ninth issues, Mother argues that the trial court erred in finding that there are no other factors affecting relocation or the best interests of Child. Subsection 5337(h) permits the trial court to consider "[a]ny other factor affecting the best interest of the child." *See* 23 Pa.C.S.A. § 5337(h)(10). Similarly, subsection 5328(a)(16) permits the trial court to consider "[a]ny other relevant factor." *See* 23 Pa.C.S.A. §5328(a)(16).

Mother asserts that she and Stepfather desire children, "and it is their hope and goal for . . . Child to have a sibling in the near future. As Child is still young, she will be able to have a meaningful relationship with the new sibling if she is permitted to relocate with Mother and Stepfather." Mother's Brief at 48. Mother argues that the trial court failed to consider this evidence, which she asserts favors the proposed relocation being in "Child's best interest and enhanc[ing] her quality of life." *Id*.

In her concise statement, Mother failed to specify what additional factor(s) the trial court purportedly failed to deem relevant to or affecting the proposed relocation. The trial court was not required to guess the factor(s) to which Mother was referring. *See S.S. v. T.J.*, 212 A.3d 1026, 1031 (Pa. Super. 2019) (observing that the concise statement must be sufficiently precise to allow the trial court to understand the allegation of error and to offer a rebuttal and that, when a court has to guess what issues an appellant is appealing, that is not enough for meaningful review); *see also In re*

***M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) (holding that issues not included in the concise statement are waived).

Even if Mother's eighth and ninth issues were not waived, we would reject them because they are based on her speculation that she may have a child in the near future. ***See Haraschak v. Haraschak***, 407 A.2d 886, 888 (Pa. Super. 1979) (holding that a court may not rely on speculative future events in making a custody determination). Thus, Mother's eighth and ninth issues warrant no relief.

In her tenth and eleventh issues, Mother argues that the trial court erred in finding that she has moved with Child four times based on prior romantic relationships and that she has changed Child's school multiple times. These issues implicate subsection 5328(a)(4), which concerns "the need for stability and continuity in the child's family life, education, and community life." 23 Pa.C.S.A. § 5328(a)(4).

Mother acknowledges that she has moved residences "on multiple occasions throughout [C]hild's life." Mother's Brief at 50. Nevertheless, Mother disagrees that her relocations were motivated by romantic relationships. Mother claims that Child "has never changed schools while in Mother's primary care." ***Id***. Mother instead contends that the trial court's August 20, 2021 order forces Mother and Child to relocate to Lilly, Cambria County, and Child to transfer schools. Mother asserts that the trial court "distorts" her living situation at the time of trial, as she was only temporarily

living with great-grandmother because her lease expired fourteen days before trial, and she wanted to wait until the trial court made a decision regarding relocation before committing to another lease agreement.

The trial court considered Mother's tenth and eleventh issues and determined that they lacked merit. The court reasoned:

> In the case at hand, in factor number 4 in the memorandum of custody of the September 3, 2021 order of court this court stated as follows: "Mother has moved four times and is proposing a fifth time." "Mother has moved [C]hild based on prior romantic relationships.["] The statements were two separate sentences. This court did not state that Mother moved [C]hild four times based on prior romantic relationships. Mother has moved [C]hild, who is seven years old, at least four times and is proposing a fifth time. Mother has moved [C]hild and proposed moving [C]hild based on different romantic relationships.
>
> This court's conclusion that Mother moved [C]hild four times and is proposing a fifth time was not an error of law and is supported by competent evidence of record. This court's conclusion that Mother moved the child based on prior romantic relationships was not an error of law and is supported by competent evidence of record. The conclusions are reasonable as shown by the evidence of record and in the best interest of [C]hild.
>
> * * * *
>
> . . . [C]hild is 7 years old. In the seven years since [C]hild was born, Mother has resided in five (5) different school districts. [C]hild attended Kindergarten in the North Hills School District. Pursuant to the [subject order,] [C]hild was to begin the 2021-2022 school year in the school district which covers Lilly, PA.
>
> . . . The competent evidence of record supports the fact that Mother has changed [C]hild's school once and has changed [C]hild's school district multiple times. The conclusion that Mother's multiple moves and changing of [C]hild's school makes her less stable and consistent is still reasonable. . . .

Trial Court Opinion, 10/4/21, at 18-19 (unnecessary capitalization and citations to the record omitted).

The trial court's findings are supported by the record. As we discern no abuse of discretion concerning the trial court's findings, Mother's tenth and eleventh issues merit no relief.

In her twelfth, thirteenth, and fourteenth issues, Mother challenges the trial court's additional findings under subsection 5328(a)(4) that she is most stable and consistent when she is residing with great-grandmother], that she relies on great-grandmother to assist in attending to Child's daily needs, and that Mother relies on great-grandmother to a greater degree than Father relies on paternal grandmother. Mother's issues also implicate subsection 5328(a)(10), concerning "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S.A. § 5328(a)(10).

Mother claims that her testimony and actions demonstrate that she has been the primary custodial parent and caregiver to Child for a majority of Child's life. Mother points out that she obtained employment as a nurse at Children's Hospital and that, in 2017, she moved Child to Allegheny County. Mother maintains that "[i]t is manifestly unreasonable to conclude that Mother could possibly rely on [great-grandmother] to assist in attending to . . . Child's daily needs when [great-grandmother] resides three . . . hours away from both Mother and Child." Mother's Brief at 53. Mother argues that she has

made all major decisions regarding Child's upbringing with no objection from Father, and that she has assumed a majority of the costs and expenses for Child. Mother claims that she relied on great-grandmother to assist with childcare when Mother was a teenage parent and while putting herself through nursing school. Mother points out that Father exercises only partial custody on weekends and that he relies on paternal grandmother to provide childcare during his custodial time.

The trial court determined that Mother "is most stable and consistent when she is residing with [great-grandmother]." Trial Court opinion, 9/27/21, at 10. The trial court additionally determined that Mother "relies on [great-grandmother] to assist in attending to [C]hild's daily needs," and that she relies on great-grandmother "to a greater degree than Father relies on" paternal grandmother. *Id*. at 11.

Our review of the record demonstrates that great-grandmother's house has provided Child with the most stable and consistent primary residence since her birth. There is no dispute that the maternal great-grandmother continues to be a source of stability in Child's life. As mentioned above, Mother and Child have moved several times and were again residing with great-grandmother at the time of the trial. The trial court balanced Mother's moves against the fact that Father has moved one time to a home that he purchased in Blair County in 2018, in order to be in closer proximity to Child. Father testified that the paternal grandmother lives in Maryland, which is two hours

in driving distance from his home, and that, since September 2020, paternal grandmother visits on weekends and provides childcare when he works. ***See*** N.T., 7/14/21, at 106-107. As the trial court's determination that Mother and Father depend on the respective grandmothers in caring for Child, we discern no abuse of discretion by the court in weighing subsection 5328(a)(4) slightly in Father's favor, and subsection 5328(a)(10) equally between the parties. Accordingly, Mother's twelfth, thirteenth, and fourteenth issues warrant no relief.

In conclusion, we emphasize that Mother had the burden of proving that her proposed relocation was in Child's best interests. The trial court carefully and thoroughly considered Child's best interest in light of the statutory relocation and best interest factors before determining that Child's relocation to Fort Carson, Colorado would adversely impact her relationship with Father as well as her physical, educational, and emotional development. The trial court's findings are supported by the record and we discern no abuse of discretion or error of law. Accordingly, we affirm the order denying Mother's request to relocate with Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/08/2022